IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ROBERT GRIMMETT,

            Plaintiff,

v.                                  CIVIL ACTION NO.   2:23-cv-00084

SUNLIGHT FINANCIAL LLC, et al.,

            Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court is a Motion for Judgment on the Pleadings filed by Defendant Sunlight Financial LLC ("Sunlight"). [ECF No. 31]. Because Sunlight is not a proper defendant for Plaintiff's claims, the motion is **GRANTED**.

## I.   Background

This action arises out of the sale and financing of a solar energy system that allegedly "does not operate as described, is defective, and has not conformed to its warranties." [ECF No. 1-1, ¶ 1]. The seller of the system, PowerHome Solar d/b/a Pink Energy ("PowerHome"), has since gone out of business and filed for bankruptcy, and therefore is not a party to this action. *Id.* ¶ 31. The buyer, Plaintiff Robert Grimmett, now seeks to hold liable the defendant financing providers, Sunlight and Technology Credit Union ("TCU"), both for PowerHome's alleged misconduct and for their own

participation in an allegedly exploitative financing scheme that contributed to the damages claimed by Mr. Grimmett.

On or about January 14, 2022, Plaintiff contracted with PowerHome for the purchase of a solar energy system. *Id.* ¶ 12. Mr. Grimmett alleges that PowerHome "made numerous fraudulent, misleading, and deceptive representations to Plaintiff concerning the advantages of the system." *Id.* ¶ 18. "Based on these representations, Plaintiff entered into a contract with [PowerHome] for the purchase and installation of solar panels on his home and/or property and Plaintiff financed the purchase of solar panels via a consumer credit contract with Defendants." *Id.* ¶ 20.

According to Mr. Grimmett, he "was directed to click on a touchscreen on a tablet that the representative had and was not provided an opportunity to read the contract that he 'signed.'" *Id.* ¶ 21. Since the time of the purchase, Mr. Grimmett alleges he "has repeatedly requested copies of the financing documents, but was never provided a copy." *Id.* ¶ 24. Consequently, he "did not understand and was not informed of any of the written contractual terms." *Id.* ¶ 26. Defendant Sunlight has since supplied copies of the written agreements. *See* [ECF Nos. 32-1, 32-2]. Accordingly, the record indicates that Mr. Grimmett entered into two separate but related contracts: first, a Purchase and Installation Form, between Plaintiff and PowerHome, for the purchase and installation of the solar energy system (the "Purchase Agreement"), [ECF No. 32-1]; and second, a Long-Term Loan Agreement

and Promissory Note, between Plaintiff and Defendant TCU, for the financing of the system (the "Loan Agreement"), [ECF No. 32-2].

Following his purchase, Mr. Grimmett now complains that PowerHome's "representations about the system were entirely false." [ECF No. 1-1, ¶ 28]. He states that the system "has made no discernible decrease in his monthly bill and has overall greatly increased his expenses." *Id.* ¶ 29. Moreover, "[t]he system has been inoperational or defective since it was installed." *Id.* ¶ 30. Accordingly, Mr. Grimmett claims that he "would not have purchased the solar panel energy system and energy saving products if he had known that they would provide no benefits, be defective, and/or would not be installed properly." *Id.* ¶ 35.

Mr. Grimmett further alleges that PowerHome's "deceptive sales tactics . . . are enabled, facilitated, and ratified by" companies like the defendants, which "provide loans and loan servicing to fund the projects." *Id.* ¶ 58. Defendants Sunlight and TCU "are online lenders which utilize a paperless point of sale system for generating loans." *Id.* ¶ 59. The defendants' businesses focus on "arranging loans to finance the purchase and installation of solar panels on the homes of individual customers." *Id.* ¶ 60.

A core component of Sunlight's business is a point-of-sale platform known as "Orange," through which Defendant "partner[s] with contractors nationwide to offer homeowners innovative, affordable loans." *Id.* ¶ 63 (quoting *About Us*, Sunlight Fin., https://sunlightfinancial.com/about/ (last visited Oct. 2, 2023)). According to the

3

Complaint, PowerHome and other contractor-partners "are deputized to simultaneously sell customers both solar panels and financing for the purchase of the solar panels through Defendants' loans," thereby allowing the partners "to close more transactions." *Id.* ¶ 64. Sunlight allegedly "offers its 'Partners' immediate, on-the-spot approval of the loan applications that they submit through an electronic, paperless process." *Id.* ¶ 67. Mr. Grimmett also claims that Sunlight "retains a portion of every loan generated by the sales people of its 'Partners' to cover its fees and charges," and therefore "is incentivized to keep 'Partners' happy." *Id.* ¶¶ 68–69.

Mr. Grimmett contends that Sunlight's Orange platform "enables and facilitates the exploitation of consumers by unscrupulous solar installation contractors who become 'Partners.'" *Id.* ¶ 70. The platform allegedly lacks "effective safeguards," causing consumers to take on "loans that they do not understand." *Id.* According to Plaintiff, Sunlight's "paperless system, focus on speed, and financial incentives allow 'Partners' to close sales transactions, lock customers into financing, receive immediate payment and be long gone by the time a consumer receives their first invoice from Defendant Sunlight." *Id.* ¶ 71. Sunlight "has elected to turn a blind eye to misconduct by its 'Partners' and, despite deputizing them with significant authority to lock customers into loans, exercises virtually no oversight over their activities," instead "rely[ing] upon meaningless warranties and representations in contracts with its 'Partners'" while "pocket[ing] a portion of every loan generated by its 'Partners.'" *Id.* ¶ 72.

Dissatisfied with his purchase experience, Mr. Grimmett filed a Complaint in the Circuit Court of Mingo County, West Virginia, on December 22, 2022. [ECF No. 1, ¶1]. On February 3, 2023, Sunlight removed the case to this court based on diversity jurisdiction. *Id.* ¶ 6. Mr. Grimmett's Complaint sets forth sixteen causes of action against Defendants Sunlight and TCU: breach of contract (Count I), common law fraud (Count II), constructive fraud (Count III), negligent misrepresentation (Count IV), negligence (Count V), unfair and deceptive acts or practices (Count VI), unconscionability (Count VII), unlawful referral sale in violation of West Virginia Code § 46A-2-110 (Count VII), breach of express warranties (Count IX), breach of implied warranty of merchantability (Count X), breach of implied warranty of fitness (Count XI), cancellation of contract by rejection (Count XII), cancellation of contract by revocation of acceptance (Count XIII), breach of duty of good faith (Count XIV), civil conspiracy (Count XV), and joint venture (Count XVI). [ECF No. 1-1].

The instant Motion for Judgment on the Pleadings, filed on June 14, 2023, seeks dismissal of all sixteen claims as asserted against Defendant Sunlight. [ECF No. 31]. Plaintiff filed a response in opposition, [ECF No. 34], and Defendant has replied, [ECF No. 40]. The motion is now ripe for review.

## II.    Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). In such a motion, a party may argue failure to state a claim on which relief may be granted, and the

standard is the same as if the motion were brought under Rule 12(b)(6); the only difference between a Rule 12(c) motion and a Rule 12(b)(6) motion is timing. *Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002).

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of a complaint or pleading. *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement need not include "detailed factual allegations," but it must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive dismissal, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To achieve facial plausibility, the plaintiff must plead facts allowing the court to draw the reasonable inference that the defendant is liable, moving the claim beyond the realm of mere possibility. *Id.* The district court must accept as true all factual allegations contained in the complaint, however, bare "labels and conclusions" or "formulaic recitation of the elements of a cause of action" are not enough. *Id.*

In resolving a motion to dismiss under Rule 12, the court may not consider "matters outside the pleadings." Fed. R. Civ. P. 12(d). The court may, however, consider "documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y*

6

*of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal markings and citations omitted). Here, the court will consider the contracts attached to Sunlight's motion, which form the core of this case and were expressly relied upon throughout the Complaint. The court will not, however, consider the documents attached to Plaintiff's response, which were never referenced by the Complaint.

In the event of conflict between the allegations of the complaint and any attached or incorporated exhibit, "the district court should consider the nature of the document and why the plaintiff attached it." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016). "When the plaintiff attaches or incorporates a document upon which his claim is based, or when the complaint otherwise shows that the plaintiff has adopted the contents of the document, crediting the document over conflicting allegations is proper." *Id.* "But in cases where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true." *Id.*

## III. Discussion

### A. Holder Liability (Counts I, V, VII, VIII, IX, X, XI, XII & XIII)

Before turning to the individual claims in this case, I address the primary, overarching issue raised by the instant motion: whether the Complaint offers a theory of liability under which Mr. Grimmett may hold Defendant Sunlight responsible for any of the alleged misconduct. Defendant contends that "almost all of Plaintiff's

7

claims against Sunlight rest on his contention that Sunlight is liable under the
[Federal Trade Commission ('FTC')] Holder Rule for the actions of the now-defunct
seller of the system," and his claims therefore must fail "because Sunlight is/was not
a party to any agreement with Plaintiff and is neither the seller nor holder of the
loan." [ECF No. 32, at 6]. Indeed, for thirteen of the sixteen causes of action asserted,
Plaintiff alleges that Defendants are liable for PowerHome's conduct "[u]nder the
FTC Holder Rule, state law, and language in the contract." [ECF No. 1-1, ¶¶ 80, 97,
103, 110, 122, 129, 140, 145, 155, 169, 183]. In response, Mr. Grimmett maintains
that "none of [his] claims are based solely on holder liability," but instead arise from
Sunlight's "direct involvement in the sale." [ECF No. 34, at 11].

The FTC mandates, by regulation, that all consumer credit contracts include
the following provision:

> NOTICE: ANY HOLDER OF THIS CONSUMER CREDIT
> CONTRACT IS SUBJECT TO ALL CLAIMS AND
> DEFENSES WHICH THE DEBTOR COULD ASSERT
> AGAINST THE SELLER OF GOODS OR SERVICES
> OBTAINED PURSUANT HERETO OR WITH THE
> PROCEEDS HEREOF. RECOVERY HEREUNDER BY
> THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID
> BY THE DEBTOR HEREUNDER.

16 C.F.R. § 433.2. In accordance with the regulatory directive, known as the FTC
Holder Rule, this provision was included in the Loan Agreement between Plaintiff
and Defendant TCU. [ECF No. 32-2, at 24]. "The language of the rule specifically
states that a creditor is subject to all claims and defenses that the debtor could assert
against the seller." *Crews v. Altavista Motors, Inc.*, 65 F. Supp. 2d 388, 390 (W.D. Va.

8

1999). Pursuant to this provision, Mr. Grimmett may assert against TCU, the creditor, any claims or defenses that he could assert against PowerHome, the seller.

But with respect to Defendant Sunlight, which neither entered into a consumer credit contract with Plaintiff nor subsequently held the loan,[1] the Holder Rule does not create liability. Accordingly, to the extent that Plaintiff's claims arise directly under his contractual agreements or involve solely the actions of the seller, Sunlight is not a proper defendant and must be dismissed. I briefly discuss each of these claims in turn.

### i.   Breach of Contract (Count I)

To succeed on the Breach of Contract claim set forth in Count I, Plaintiff must identify the contractual obligation(s) that the defendant allegedly failed to satisfy. Because Defendant Sunlight was not a party to the Purchase Agreement or Loan Agreement, Sunlight has no obligations under either contract.[2] And any breach by PowerHome of its own obligations cannot be imputed to Defendant Sunlight, which never held the loan.

### ii.   Negligence (Count V)

In Count V, Mr. Grimmett claims that "Seller was negligent" in "failing to train and supervise its employees," "failing to make sure that its employees provided

---

[1] To the extent the Complaint reflects Plaintiff's prior belief that Sunlight entered into contracts that were then "assigned to Defendant TCU," [ECF No. 1-1, ¶ 74], these allegations contradict the plain terms of the written agreements and, therefore, are not entitled to the presumption of truth.

[2] In the interest of precision, I clarify that by finding that Sunlight was not a party to the Purchase or Loan Agreement, I do not find that Sunlight never contracted with Plaintiff at all. They may have formed an unwritten agreement regarding Sunlight's role in facilitating the loan, but that question is not now before the court.

correct information to Plaintiff," "failing to make sure that its employees used proper and fair methods of selling the product," "failing to give the employees the correct information to market and sell the product," and "allowing its employees to give false and misleading information about tax rebates, energy savings, net metering, referral fees, and other issues." [ECF No. 1-1, ¶ 113]. Notably, every allegedly negligent act is explicitly attributed to "Seller and its officers, agents, and/or employees." *Id.* ¶ 114. As previously determined, PowerHome's alleged negligence cannot be imputed to Sunlight under a theory of holder liability. And Plaintiff has not alleged that Defendant Sunlight itself committed negligence. *See id.* ¶ 123 ("As a result of *Seller's* negligence, Plaintiff is entitled to recover . . . against Defendants." (emphasis added)); *see also id.* ¶ 120 ("*Seller* breached its duty of care to Plaintiff." (emphasis added)). Accordingly, the Negligence claim must be dismissed.

### iii.  Unconscionability (Count VII)

In Count VII, Mr. Grimmett claims that "the purchase and financing of the solar panels was unconscionable at the time the transactions were made and/or was induced by unconscionable conduct." [ECF No. 1-1, ¶ 139]. He asserts that "[b]oth West Virginia common law and statutory law provide for a defense to a contract that is (i) unconscionable in terms or (ii) unconscionably induced," [ECF No. 34, at 14], and he asks that the court "refuse to enforce the consumer credit contract" and award him various forms of damages, [ECF No. 1-1, ¶ 141].

I must first note that West Virginia law does not recognize a common law cause of action for unconscionability. *Staats v. Bank of Am., N.A.*, No. 3:10-CV-68, 2010 WL 10899255, at *9 (N.D. W. Va. Nov. 4, 2010) (finding "no authority . . . for the proposition that West Virginia law recognizes a common law cause of action for unconscionable inducement" and noting that "unscrupulous lending practices give rise to claims under" *statutory* law (quoting *Thaxton v. Novastar Mortg., Inc.*, No. 2:05-0858, 2006 WL 8077011, at *2 (S.D. W. Va. Apr. 20, 2006))). The West Virginia Consumer Credit and Protection Act authorizes courts to "refuse to enforce" an "agreement or transaction" found "to have been unconscionable at the time it was made, or to have been induced by unconscionable conduct such as affirmative misrepresentations, active deceit or concealment of a material fact." W. Va. Code § 46A-2-121(a)(1). But as previously discussed, Sunlight was neither party to nor holder of a consumer credit contract with Plaintiff. Thus, there are no contractual obligations that the court could "refuse to enforce" against Defendant Sunlight, and this claim must be dismissed. Additionally, I find that dismissal is appropriate even without affording Plaintiff "the opportunity for the factual evaluation inherent in the statutory mandate that there be an evidentiary presentation," [ECF No. 34, at 16 (citing W. Va. Code § 46A-2-121(b))], because I do not reach the substantive issue of unconscionability.

11

#### iv.  Referral Sale (Count VIII)

In Count VIII, Mr. Grimmett invokes West Virginia Code § 46A-2-110, which prohibits a seller from offering a rebate or discount as an inducement for a consumer credit sale in exchange for the buyer's assistance in procuring new customers, if the earning of the rebate "is contingent upon the occurrence of an event subsequent to the time the buyer . . . agrees to buy." This law prevents the seller from enforcing any agreement so induced and grants the buyer the option to "rescind the agreement or retain the goods delivered and the benefit of any services performed, without any obligation to pay for them." *Id.* Plaintiff alleges that "[a]s an inducement to purchase solar panels from Seller, Seller offered to pay Plaintiff a rebate and/or fee for each customer of Seller referred by Plaintiff." [ECF No. 1-1, ¶ 143]. Because of this alleged referral sale in violation of state law, Plaintiff claims he "is entitled to rescind the agreements with Seller and Defendants and receive a full refund of all monies paid or, at Plaintiff's option, Plaintiff is entitled to retain the solar panels without any obligation to pay for them." *Id.* ¶ 14. Once again, Mr. Grimmett's claim fails because Sunlight is not a proper defendant. Even if his allegations are entirely true, the seller's misconduct cannot be imputed to Defendant Sunlight, which never held the loan or otherwise formed a consumer credit contract with Plaintiff.

#### v.  Breach of Express and Implied Warranties (Counts IX, X & XI)

Plaintiff next asserts Breaches of Express Warranties (Count IX), the Implied Warranty of Merchantability (Count X), and the Implied Warranty of Fitness (Count

XI). These claims relate entirely to PowerHome's conduct or otherwise arise under the Purchase Agreement to which Sunlight has never been a party. *See*, [ECF No. 1-1, ¶¶ 149–51 ("Seller expressly warranted . . . .")]; *id.* ¶¶ 158–62 (invoking W. Va. Code § 46-2-314, which provides for an implied warranty of merchantability "in a contract for [the] sale [of goods] if the seller is a merchant with respect to goods of that kind"); *id.* ¶¶ 165–68 (invoking W. Va. Code § 46-2-315, which provides for an implied warranty of fitness by "the seller").[3] Accordingly, the warranty claims must be dismissed against Defendant Sunlight.

### vi.  Cancellation of Contract (Counts XII & XIII)

Counts XII and XII set forth claims for Cancellation of Contract by Rejection and by Revocation of Acceptance, respectively. West Virginia law permits a buyer to reject or revoke his acceptance of nonconforming goods under certain circumstances. *See* W. Va. Code §§ 46-2-601, 46-2-608. Mr. Grimmett asserts that he effectively rejected and revoked acceptance of the solar energy system and now asks the court to enforce his rejection or revocation. [ECF No. 1-1, ¶¶ 172, 175]. These claims arise directly under the Purchase Agreement, and, as previously discussed, Sunlight has never been a party to the Purchase or Loan Agreement nor ever held the loan.

---

[3] I am not required to accept as true the legal conclusion stated in the Complaint that "Defendant Sunlight Financial is a 'seller' and 'merchant' pursuant to the UCC." [ECF No. 1-1, ¶ 8]. Plaintiff's warranty claims involve alleged defects in the solar energy system he received, and there are no factual allegations that Sunlight "deals in goods of the kind . . . involved in the transaction." W. Va. Code § 46-2-104(1). If anything, Sunlight may be a merchant of financial products, but those are not the "goods" at issue in these claims.

13

Given Sunlight's non-party status, Plaintiff responded to the motion for judgment on the pleadings by pivoting from the initial allegations to focus on an agency theory of liability. *See* [ECF No. 34, at 17–18 ("Even though rejection or revocation of acceptance of goods may only be made against a seller of those goods, sellers of goods under the UCC are still subject to the law of agency." (quoting *Rawls v. Associated Materials, LLC*, No. 1:10-cv-01272, 2012 WL 3852875, at *5 (S.D. W. Va. Sept. 5, 2012)))]. Under this theory, PowerHome was Sunlight's agent and therefore "act[ed] as the principal's representative when entering into contracts." *Id.* (quoting *Rawls*, 2012 WL 3852875, at *4). The Complaint hints at agency only sparingly, through conclusory allegations not entitled to the presumption of truth. *See, e.g.,* [ECF No. 1-1, ¶ 66 (alleging that contractors "are Defendants' agents in originating loans")]; *id.* ¶ 86 (describing the seller as "Defendants' representative"); *id.* ¶ 11 ("Upon information and belief, each Defendant was the principal, agent or employee of each other Defendant, and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth, by reason of which each Defendant is liable to Plaintiff for the relief prayed for herein."). Nevertheless, I will examine the Complaint as a whole and determine whether the facts alleged are capable of establishing an agency relationship.

"The term 'agency' means a fiduciary relationship by which a party confides to another the management of some business to be transacted in the former's name or

on his account." *Harper v. Jackson Hewitt, Inc.*, 706 S.E.2d 63, 75 (W. Va. 2010) (quoting *State ex rel. Clark v. Blue Cross Blue Shield of W. Va., Inc.*, 510 S.E.2d 764, 788 (W. Va. 1998)). "An 'agent' in the restricted and proper sense is a representative of his principal in business or contractual relations with third persons; while a 'servant' or 'employee' is one engaged, not in creating contractual obligations, but in rendering service, chiefly with reference to things but sometimes with reference to persons when no contractual obligation is to result." Syl pt. 3, *State ex rel. Key v. Bond*, 118 S.E. 276 (W. Va. 1923). "[T]he question of whether an agency relationship exists is generally fact dependent." *Harper*, 706 S.E.2d at 76. "Proof of an express contract of agency is not essential to the establishment of the relation. It may be inferred from facts and circumstances, including conduct." Syl. pt. 7, *Cassiday Fork Boom & Lumber Co. v. Terry*, 73 S.E. 278 (W. Va. 1911). The key element of an agency relationship "is the existence of some degree of control by the principal over the conduct and activities of the agent." Syl. pt. 3, *Teter v. Old Colony Co.*, 441 S.E.2d 728, 730 (W. Va. 1994). "[A] principal denying agency must show that the principal neither controlled, nor had the right to control, the work" done by the supposed agent. *Harper*, 706 S.E.2d at 76 (citing *Thomson v. McGinnis*, 465 S.E.2d 922, 927 (W. Va. 1995)).

Here, the Complaint lacks allegations from which a jury could find an agency relationship between Sunlight and PowerHome. None of the facts alleged indicate that Sunlight controlled, or had the power to control, PowerHome's conduct. In

Plaintiff's own words, Sunlight exerts influence over its contractor-partners merely through "financial incentives," [ECF No. 1-1, ¶ 71], and "exercises virtually no oversight over their activities," *id.* ¶ 72. After excising the conclusory statements that agency relationships existed, the remaining allegations against Sunlight merely describe the various services it offers and assert that Sunlight "elected to turn a blind eye to misconduct by" the contractors who take advantage of those services. *Id.* ¶ 72; *see, e.g., id.* ¶ 63 (quoting Sunlight's marketing language that its "best-in-class technology and deep credit expertise simplify and streamline homeowner finance, enabling our contractor partners to quickly and easily provide homeowners with simple access to financing at point-of-sale via phone, tablet or computer"); *id.* ¶ 65 ("Defendant Sunlight Financial states that its 'simple and intuitive sales platform,' 'instant credit approvals' and 'fast funding' to [sic] keep solar contractors' businesses moving quickly."); *id.* ¶ 64 ("The availability of financing allows the 'Partner' contractors to close more transactions."); *id.* ¶ 63 ("For contractors and homeowners alike, experiencing the Sunlight advantage means access to flexible payment options, a frictionless home upgrade experience, and elite support—from loan approval to project completion and beyond."). Nothing suggests that Sunlight and PowerHome had anything other than an ordinary business relationship by which Sunlight provided services in exchange for a fee. Even if Sunlight "vest[ed] the sales representative of [PowerHome] with the authority to obtain to [sic] submit loan applications," [ECF No. 1-1, ¶ 66], there is nothing to indicate that Sunlight exerted

16

any control over PowerHome's solicitation of applications, and, moreover, those applications still required approval through Sunlight, *id.* ¶ 67.[4] If anything, the Complaint might permit an inference that Sunlight was TCU's agent. *See, e.g.*, *id.* (stating that Sunlight offers "immediate, on-the-spot approval" of applications for loans from TCU); *see also* [ECF No. 34, at 18 (arguing, although not expressly alleged in the Complaint, that "Sunlight is a servicer for TCU, the holder which stands in the shoes of the seller")]. But even that would not bind Sunlight, as the *agent*, to its principal's Loan Agreement, much less to the Purchase Agreement or any express warranties made to Plaintiff by PowerHome's salesperson.

For these reasons, the claims for Cancellation of Contract warrant dismissal against Defendant Sunlight.

### B. Direct Liability (Counts II, III, IV, VI & XIV)

#### i. Fraud & Negligent Representation (Counts II, III & IV)

Counts II and III contain claims for Common Law Fraud and Constructive Fraud, respectively, and Count IV contains a claim for Negligent Representation. All three claims are largely based on the same allegations: that "Defendants failed to disclose or concealed the fact that the subject solar panel system was in poor and/or

---

[4] Similarly, the conclusory allegation that Sunlight "deputiz[es] [contractor-partners] with significant authority to lock customers into loans," [ECF No. 1-1, ¶ 72], cannot, without more, establish an agency relationship given the Complaint's repeated acknowledgements that Sunlight retains the final authority to approve or reject a loan application submitted by PowerHome, *see, e.g.*, *id.* ¶¶ 63, 65–67 (repeatedly alleging that Sunlight offers streamlined loan approvals and that contractor-partners are authorized only "to submit loan applications").

defective condition, affecting its value" and that "material terms of the sale and financing agreement were not disclosed to Plaintiff." [ECF No. 1-1, ¶¶ 84, 90, 100].

To sustain a claim for fraud under West Virginia law, Plaintiff must establish three essential elements: "(1) that the act claimed to be fraudulent was the act of the defendant or induced by him; (2) that it was material and false; that plaintiff relied upon it and was justified under the circumstances in relying upon it; and (3) that he was damaged because he relied upon it." Syl. pt. 5, *Trafalgar House Constr., Inc. v. ZMM, Inc.*, 567 S.E.2d 294, 296–97 (W. Va. 2002) (quoting Syl pt. 1, *Lengyel v. Lint*, 280 S.E.2d 66, 67 (W. Va. 1981)). "Fraudulent concealment involves the concealment of facts by one with knowledge or the means of knowledge, and a duty to disclose, coupled with an intention to mislead or defraud." *Id.* at 300 (citing *Silva v. Stevens*, 589 A.2d 852, 857 (Vt. 1991)).

Additionally, "[f]raud may be either actual or constructive." *Horton v. Pro. Bureau of Collections of Md., Inc.*, 794 S.E.2d 395, 399 (W. Va. 2016) (quoting *Stanley v. Sewell Coal Co.*, 285 S.E.2d 679, 682 (W. Va. 1981)). "Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed." *Id.* "Constructive fraud is a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." *Id.* In other words, constructive fraud "exists in cases in which conduct, although not

18

actually fraudulent, ought to be so treated" because that conduct "has all the actual consequences and legal effects of actual fraud." *Id.* Actual and constructive fraud involve the same basic elements, except that constructive fraud "does not require proof of fraudulent intent." *Id.* Similarly, a claim for negligent misrepresentation requires a material falsity but does not require that the defendant knew the information was false—only that the representation was made "under circumstances in which the person making it ought to have known if he did not know of its falsity." *Folio v. City of Clarksburg*, 655 S.E.2d 143, 151 (W. Va. 2007) (quoting *Horton v. Tyree*, 139 S.E. 737, 738 (W. Va. 1927)).

Like much of the Complaint, the act claimed by Plaintiff to be fraudulent are largely alleged to have been committed by the seller, PowerHome. *See, e.g.*, [ECF No. 1-1, ¶ 18 ("Seller made numerous fraudulent, misleading, and deceptive representations to Plaintiff concerning the advantages of the system, including but not limited to energy savings, reduced electric bills, energy tax credits, net metering, and other representations.")]; *see also id.* ¶ 98 ("As a result of *Seller's* fraud, misrepresentations, and omissions, Plaintiff is entitled to recover . . . against Defendants . . . ." (emphasis added)). Because PowerHome's conduct cannot be attributed to Defendant Sunlight under a theory of holder liability, Plaintiff's claim requires a purportedly fraudulent act that was committed or induced *by Sunlight*.

With respect to the allegation that Defendants concealed the true condition of the solar panel system, *id.* ¶ 84, the Complaint fails to establish that Sunlight had a

duty to disclose—or even had access to—that information. *See generally McNair v. Johnson & Johnson*, 818 S.E.2d 852, 861 (W. Va. 2018) ("Whether a defendant owed a duty 'is not a factual question for the jury,' but rather, one that 'must be rendered by the court as a matter of law.'" (quoting *Aikens v. Debow*, 541 S.E.2d 576, 581 (W. Va. 2000))). I am not required to accept as true Plaintiff's conclusory allegation that "Defendants knew or reasonably should have known that the subject system would not operate as described and promised." [ECF No. 1-1, ¶ 41]; *cf. Ashcroft*, 556 U.S. at 681 (finding "bald allegations" regarding parties' knowledge and intent were "conclusory and not entitled to be assumed true" (citing *Twombly*, 550 U.S. at 554–55 ("[Courts] are not bound to accept as true a legal conclusion couched as a factual allegation."))). Instead, "the well-pleaded, nonconclusory factual allegation[s]" must "permit the court to infer" that Sunlight knew or had means of knowing the condition of the solar panels and was under a duty to disclose that information to Mr. Grimmett. *Id.* at 679–80. I find they do not. The allegations against Defendant Sunlight are strictly limited to the financing aspects of the transaction. Plaintiff does not allege that Sunlight ever participated in the operations of its contractors or otherwise involved itself in the design, manufacture, installation, or performance of its contractors' products. *Cf.* Syl. pt. 6, *Glascock v. City Nat'l Bank of W. Va.*, 576 S.E.2d 540, 541 (W. Va. 2002) ("Where a lender making a construction loan to a borrower creates a special relationship with the borrower by maintaining oversight of, or intervening in, the *construction* process, that relationship brings with it a duty to

disclose any information that would be critical to the integrity of the construction project." (emphasis added)). Even accepting Plaintiff's theory—that Sunlight aggressively recruits contractors to its platform where the "paperless system, focus on speed, and financial incentives allow [contractors] to close sales transactions, lock customers into financing, receive immediate payment and be long gone by the time a consumer receives their first invoice from Defendant Sunlight Financial," [ECF No. 1-1, ¶ 71]—these allegations do not support an inference that Sunlight "induced" PowerHome to misrepresent or conceal the condition of its product.

The Complaint likewise does not suggest that Defendant Sunlight concealed, or induced PowerHome to conceal, "material terms of the sale and financing agreement." *Id.* ¶ 90. Although this contention does implicate the financing side of the purchase, the allegedly wrongful concealment is explicitly attributed to PowerHome, not Sunlight. *See id.* ¶ 135 (explaining that increase in monthly payment amount "was cleverly hidden from Plaintiff because *Seller* had Plaintiff e-sign the finance agreement without any explanation of the terms" (emphasis added)). None of the facts in the Complaint suggest that Sunlight encouraged or incentivized its contractor-partners to obscure the terms of their agreements, or even that Sunlight was aware of this alleged practice. It is not enough simply that "[t]he availability of financing" may allow contractors "to close more transactions," [ECF No. 34, at 7], particularly in the absence of allegations that Sunlight had any reason to foresee such misconduct by PowerHome or by its contractor-partners in general.

21

Additionally, the financing documents show that Sunlight took steps to ensure that borrowers understood their obligations, and there is no allegation that Sunlight had reason to believe that PowerHome salespeople were thwarting those efforts. *See* [ECF No. 32-2, at 3–4 (requiring purchaser's initials on cover letter, provided by Sunlight as facilitator, that clearly summarizes "Key Loan Terms" including the potential for increased payments after eighteen months)]; *see generally* Syl. pt. 3, *Logan Bank & Tr. Co. v. Letter Shop, Inc.*, 437 S.E.2d 271, 272 (W. Va. 1993) (holding that a creditor's duty to disclose information about a debtor to a surety arises when the creditor has reason to believe that facts are material to the surety *and "has reason to believe that the facts are unknown to the surety"* as well as a reasonable opportunity to communicate the facts (emphasis added)). Thus, the pleadings fail to show that Defendant Sunlight committed or induced a fraudulent act or owed Mr. Grimmett a duty to ensure that the contractual terms were disclosed. Plaintiff's claims for Fraud, Constructive Fraud, and Negligent Misrepresentation must be dismissed.

### ii.  Unfair and Deceptive Acts or Practices (Count VI)

In Count VI, Plaintiff accuses Defendants of committing "*per se* unfair and deceptive acts or practices in the sale," in violation of the West Virginia Consumer Credit and Protection Act ("WVCCPA"). [ECF No. 1-1, ¶ 125]. The WVCCPA protects consumers by prohibiting "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code §46A-6-104. As relevant here, the prohibited methods, acts, and practices are defined to include

"[r]epresenting that goods or services are of a particular standard, quality or grade, or that goods are of a particular style or model if they are another," engaging in any conduct which "creates a likelihood or confusion or misunderstanding," and "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any goods or services, whether or not any person has in fact been misled, deceived or damaged thereby." *Id.* § 46A-6-102(7)(G), (L), (M).

Mr. Grimmett alleges that Defendants violated these provisions by "representing that the solar energy system was of a particular quality when it was not of said quality." [ECF No. 1-1, ¶ 125]. He further alleges that "these misrepresentations are standardized and encouraged by management and joint venture/assignee Defendants."[5] *Id.* ¶ 127. But once again, Plaintiff's factual allegations are largely limited to PowerHome. *See, e.g.*, *id.* ¶ 127 ("These acts and omissions of *the Seller* . . . ." (emphasis added)); *id.* ("Many different people within the public at large have been affected by the lies and deceit of *the Seller* . . . ." (emphasis added)); *id.* ¶ 128 ("The acts and omissions of *the Seller* affect the public interest." (emphasis added)); *id.* ¶ 130 ("As a result of *Seller's* violations of the of the

---

[5] The court does not accept as true the conclusory allegation that Defendants were engaged in a "joint venture/assignee" relationship with the seller. Whether the remaining *factual* allegations indicate a joint venture is addressed later in this Opinion.

[sic] WVCCPA, Plaintiff is entitled to recover . . . against Defendants."). As for the few WVCCPA allegations that do mention "Defendants" rather than "Seller," *id.* ¶¶ 125–26, the court construes such statements as merely attempting to attribute the seller's conduct to Defendants.

Nevertheless, to the extent that Plaintiff intended to assert independent bases against Defendants for violations of the WVCCPA, his allegations lack the requisite degree of specificity to put Sunlight on notice of the claims against it. Mr. Grimmett identifies only two instances of conduct alleged to violate the WVCCPA— misrepresenting the quality of the solar energy system and failing to honor his revocation of acceptance, *id.* ¶¶ 125(a), (d)—both of which were committed by PowerHome and cannot be imputed to Sunlight. The remaining allegations speak only in generalized terms, simply reciting statutory language while failing to plead the conduct that purportedly violates the quoted provisions. *See, e.g., id.* ¶ 126 ("Defendants' conduct also constitutes general unfair or deceptive acts or practices in violation of W. Va. Code § 46A-6-104."). Because Plaintiff relies on WVCCPA provisions dealing with "deception, fraud, [or] misrepresentation," *id.* ¶ 125(c) (citing W. Va. Code § 46A-6-102(7)(M)), he "is obliged to plead *with particularity* that defendants" deceived or intended to deceive consumers, *Jones v. Sears Roebuck & Co.*, 301 F. App'x 276, 287 (4th Cir. 2008) (affirming dismissal and explaining that "a cursory reference to a 'shell game' and 'a pattern of deceptive practices' is simply not sufficiently particular to proceed") (citing Fed. R. Civ. P. 9(b) ("[A] party must state

24

with particularity the circumstances constituting fraud or mistake.")). The court finds that Plaintiff has not done so here. Accordingly, the WVCCPA claim will be dismissed.

### iii.   Breach of Duty of Good Faith (Count XIV)

Count XIV alleges that "Defendant breached the duty of good faith implied in the transaction, pursuant to the UCC, W. Va. Code § 46-1-203, by," for example, "failing to provide copies of the contracts and/or permitting Plaintiff the opportunity to read the documents before 'signing.'" [ECF No. 1-1, ¶ 182]. Again, most of the conduct described by Plaintiff was allegedly committed by PowerHome and cannot be imputed to Sunlight via holder liability or agency theory. Indeed, the only allegation that can be read to apply against Sunlight involves an omission rather than affirmative misconduct. *See id.* (alleging that "Defendant breached the duty of good faith" by "failing to provide copies of the contracts"). And as already discussed in connection with the Fraud claims, Sunlight did not have a duty to disclose that information such that its failure to do so could give rise to liability. Thus, the Complaint contains no allegations of bad faith conduct that can attributed to Defendant Sunlight, and this claim, too, must be dismissed.

### C.   Joint Liability (Counts XV & XVI)

Finally, Plaintiff seeks to impute PowerHome's alleged misconduct to Sunlight by asserting Conspiracy (Count XV) and Joint Venture (Count XVI) theories of liability. These claims are not "*per se*, stand-alone cause[s] of action" but rather "legal doctrine[s] under which liability for a tort may be imposed on people who did not

25

actually commit a tort themselves." *Croye v. GreenPoint Mortg. Funding, Inc.*, 740 F. Supp. 2d 788, 799 (S.D. W. Va. 2010) (quoting *Dunn v. Rockwell*, 689 S.E.2d 255, 269 (W. Va. 2009)). Although the doctrines have similar consequences, their elements are distinct, so I will discuss them one at a time.

### i. Conspiracy (Count XV)

"A civil conspiracy is a combination of two or more persons by concerted action to accomplish an unlawful purpose or to accomplish some purpose, not in itself unlawful, by unlawful means." Syl. pt. 8, *Dunn*, 689 S.E.2d at 259. "The cause of action is not created by the conspiracy but by the wrongful acts done by the defendants to the injury of the plaintiff." *Id.* at 268 (quoting *Dixon v. Am. Indus. Leasing Co.*, 253 S.E.2d 150, 152 (1979)). "A conspiracy may produce one or more torts. If it does, then every conspirator is liable for that tort, including a conspirator who promoted but did not commit the tort." *Id.* at 269 (quoting *Segall v. Hurwitz*, 339 N.W.2d 333, 338 (Wis. App. 1983)).

In addition to properly pleading an underlying tort, a plaintiff proceeding on a civil conspiracy claim must plead sufficient factual support for the existence of a shared conspiratorial objective and mutual agreement. *Jane Doe-1 v. Corp. of Pres. of The Church of Jesus Christ of Latter-day Saints*, 801 S.E.2d 443, 476 (W. Va. 2017) (quoting *Ash v. Allstate Ins. Co.*, No. 12-1533, 2013 WL 5676774, at *5 (W. Va. Oct. 18, 2013)). The "agreement need not be express but may be based upon evidence of a course of conduct from which the agreement to act in concert may be implied." *Id.* at

477 (quoting *Conspiracy*, 16 Am. Jur. 2d § 51 (2017)). Additionally, "not every member of a conspiracy must be aware of every action taken in furtherance of it." *Id.* at 473.

Here, Plaintiff alleges that "Defendants facilitated and participated in Seller's fraudulent conduct," [ECF No. 1-1, ¶ 187], and that they "ratified, accepted, and benefitted from the subject transaction with Plaintiff and other similar transactions that constitute a substantial segment of their business," *id.* ¶ 188. These allegations do not state a plausible claim of Conspiracy because they fail to evince a shared conspiratorial objective. Certainly, the Complaint demonstrates that Defendants "facilitated" and "financially benefit[ted]" from PowerHome's sales. *Id.* ¶¶ 68, 187. But these facts establish only that the parties shared a lawful objective—earning profits—to be accomplished by lawful means—selling and financing solar energy systems. There is no suggestion that Sunlight intended that PowerHome's products be defective, or that Sunlight had reason to know of the defects such that its continued association with PowerHome might amount to a conspiracy.

Plaintiff does allege that "Defendants knew or should have known that [he] would be unable to receive substantial benefits from the purchase of the solar panels." [ECF No. 1-1, ¶ 137]. But the only support for this assertion is the allegation that "Defendants intentionally structured the financing to . . . giv[e] a false impression of some marginal financial benefit to Plaintiff." *Id.* ¶ 134. Even if Sunlight somehow knew that Plaintiff's monthly payments would "exceed[ ] the average cost of [his] monthly power bill prior to the installation," *id.* ¶ 132, such knowledge does not give

rise to an inference that Sunlight conspired to sell defective systems that failed to live up to the seller's promises. Because customers may purchase solar panels for reasons other than financial benefit, such as environmental concerns or a desire to live "off the grid," *id.* ¶ 32, the mere existence of "financially unfeasible" payment terms does not, alone, establish Sunlight's knowledge of PowerHome's unlawful conduct. Thus, the Complaint is devoid of allegations from which one could infer that Sunlight and PowerHome shared an unlawful objective or shared a plan to accomplish a lawful objective by unlawful means. Accordingly, Plaintiff's claim for Conspiracy must be dismissed against Defendant Sunlight.

### ii.  Joint Venture (Count XVI)

"Under West Virginia law, joint venture 'is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge." *Croye*, 740 F. Supp. 2d at 799 (quoting *Armor v. Lantz*, 535 S.E.2d 737, 742 (W. Va. 2000)). "[A] joint venture arises out of a contractual relationship between the parties. The contract may be oral or written, express or implied." *Id.* (quoting *Price v. Halstead*, 355 S.E.2d 380, 384 (W. Va. 1987)). "Members of a joint venture are jointly and severally liable for all obligations pertaining to the joint venture, and the actions of the joint venture bind the individual co-venturers." *Id.* at 799–800 (quoting *Armor*, 535 S.E.2d at 742) (internal markings omitted).

Like conspiracy, joint venture requires a common objective. They differ, however, in that joint venture does not require the objective to be unlawful. Instead, it is the closely intertwined, commercial relationships between co-venturers that give rise to shared liability. A joint venture is also "frequently likened . . . to a partnership," but West Virginia courts "have nevertheless distinguished the two: 'A partnership relates to a general business while a joint adventure relates to a single transaction.'" *Armor*, 535 S.E.2d at 743 (quoting *Nesbitt v. Flaccus*, 138 S.E.2d 859, 865 (W. Va. 1964)) (internal markings omitted); *see also Lilly v. Munsey*, 63 S.E.2d 519, 523 (W. Va. 1951) (explaining that joint venture "is sometimes called a limited partnership; not limited as to liability, but as to its scope and duration").

The West Virginia Supreme Court of Appeals has "never formulated any broad analytical test by which to determine the existence of a joint venture" but has identified "certain 'distinguishing elements or features' essential to the creation of a joint venture." *Armor*, 535 S.E.2d at 743 (quoting *Pownall v. Cearfoss*, 40 S.E.2d 886, 893 (1946)).

> As between the parties, a contract, written or verbal, is essential to create the relation of joint adventurers. . . . To constitute a joint adventure the parties must combine their property, money, efforts, skill, or knowledge, in some common undertaking of a special or particular nature, but the contributions of the respective parties need not be equal or of the same character. There must, however, be some contribution by each party of something promotive of the enterprise. . . . An agreement, express or implied, for the sharing of profits is generally considered essential to the creation of a joint adventure, and it has been held that, at common law, in order to constitute a joint adventure, there must be an agreement to share in both the profits and the losses. It has also been held, however, that the sharing of losses is not essential, or at least that

29

> there need not be a specific agreement to share the losses, and that, if the nature of the undertaking is such that no losses, other than those of time and labor in carrying out the enterprise are likely to occur, an agreement to divide the profits may suffice to make it a joint adventure, even in the absence of a provision to share the losses. . . . Another essential ingredient to an allegation of joint venture is control of the joint venture by the participants.

*Croye*, 740 F. Supp. 2d at 800 (quoting *Armor*, 535 S.E.2d at 743); *see also Dailey v. Ayers Land Dev., LLC*, 825 S.E.2d 351, 358 (W. Va. 2019) ("[T]he essential elements of a joint venture . . . are an agreement to share profits and joint management and control of the business enterprise." (citing *Armor*, 535 S.E.2d at 743–45)).

Here, Plaintiff does allege that "Defendant Sunlight Financial retains a portion of every loan generated by the sales people of its 'Partners' to cover its fees and charges." [ECF No. 1-1, ¶ 68]. He further alleges a combination of money and efforts for the purpose of selling and financing solar energy products. *See id.* ¶ 64 (alleging that "contractors become Defendant Sunlight Financial's 'Partners'" and that "[t]he availability of financing allows the 'Partner' contractors to close more transactions"). Given these allegations, a contract between the parties may readily be inferred from the Complaint.

But that is where the indicia of a joint venture end. There is no allegation that the parties share in both the profits and losses, and the nature of their undertaking is such that losses are likely to occur. As such, the sharing of profits, alone, is entirely consistent with an ordinary, arms-length relationship and does not "suffice to make it a joint adventure." *Croye*, 740 F. Supp. 2d at 800. Moreover, as discussed with

respect to agency theory, the factual allegations do not indicate that Sunlight controlled, or had the power to control, the conduct of PowerHome or other contractor-partners. Accordingly, the Complaint fails to plead a Joint Venture, and this claim must be dismissed against Defendant Sunlight.

## IV.   Conclusion

For the foregoing reasons, Defendant Sunlight's Motion for Judgment on the Pleadings [ECF No. 31] is **GRANTED**. Plaintiff's claims against Sunlight in this matter are hereby **DISMISSED**. The claims against Defendant TCU remain pending.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        October 3, 2023

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

31